**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Kendra Calandra Willie,<br><br>　　　　　　　Defendant. | No. CR-25-08138-01-PCT-DGC<br><br>**ORDER** |

Defendant Kendra Calandra Willie appeals the detention order entered by Magistrate Judge Camille Bibles. Doc. 20. The government has filed a response and the Court held a hearing on October 2, 2025. The Court will affirm the detention order.

**I.   Background.**

Judge Bibles detained Defendant as a danger and a flight risk. Doc. 23. The government contends the Court should affirm on both grounds. Doc. 22. The government must prove Defendant is a danger to the community by clear and convincing evidence, 18 U.S.C. § 3142(f), and that she is a flight risk by a preponderance of the evidence, *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

The Court's review of the detention decision is *de novo*. *See United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990). The Court must review the evidence before the magistrate judge and any additional evidence submitted by the parties "and make its own independent determination whether the magistrate's findings are correct, with no

deference." *Id.* at 1193.  Under the Bail Reform Act of 1984, Defendant must be detained if the Court finds that no condition or combination of conditions will reasonably assure the safety of the community or her appearance at trial.  18 U.S.C. § 3142(e).

Defendant is charged with committing the following crimes on the Navajo Nation reservation: Kidnapping and Aiding and Abetting (Counts 1 and 2), Kidnapping of a Child and Aiding and Abetting (Counts 3 and 4), Burglary of a Residential Structure (Count 5), Assault with a Dangerous Weapon (Counts 6, 7, and 9), and Assault of a Child with a Dangerous Weapon (Count 8).  Doc. 1.  Because Defendant is charged with offenses involving a minor victim under 18 U.S.C. § 1201, a rebuttable presumption exists that no condition or combination of conditions will reasonably ensure her appearance at trial and the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(E).  This presumption shifts the burden of production to Defendant, but the burden of persuasion remains with the government.  *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  If the defendant proffers evidence to rebut the presumption, the Court then considers the four factors described below in determining whether conditions of release can reasonably ensure the appearance of the defendant and the safety of the community.

Parties may proceed by proffer at a detention hearing.  *United States v. Cabrera-Ortigoza*, 196 F.R.D. 571, 574 (S.D. Cal. 2000) (collecting authorities).  Both sides have made proffers during the October 2 hearing, and no party requests an evidentiary hearing.

**II.      Relevant Facts.**

The following facts are taken largely from the government's proffer as set forth in its response to Defendant's appeal (Doc. 22) and during the October 2 hearing, as well as the exhibit attached to the response.  Doc. 22-1.  Additional facts are found in the Pretrial Services Report (Doc. 15) and were provided by defense counsel at the hearing.

On July 22, 2024, Defendant, co-defendant Brandon James, and Kendra Kee drove to the home of P.C. in Defendant's vehicle.  P.C. was home with her three grandchildren, C.Y. (19 years old), Jane Doe (12 years old), and John Doe (8 years old).  P.C.'s daughter, Velma Clay, was not home.  Defendant began yelling for Velma and used a hammer to hit

the door of the house and break windows. Defendant yelled "open the door or I'll f***ing kill you." James kicked in the door and all three individuals entered the house. Jane Doe and John Doe hid in the bathroom and Defendant threatened P.C. with the hammer. Defendant swung the hammer at C.Y., and C.Y. backed into a corner of the home. When P.C. tried to take the hammer away from Defendant, James pulled out a handgun and told the victims to back up. Defendant then forced P.C. and C.Y. onto the couch and found the children in the bathroom. She yelled for Jane Doe and John Doe to come out of the bathroom or she would kill them. The children came out and were forced to sit on the couch with P.C. and C.Y.

Defendant told the victims that men were surrounding the house with guns and were watching them. Defendant waited by the door and sent James and Kee to look for Velma elsewhere. Defendant told the victims she was going to sell C.Y. and Jane Doe to "Mexicans in Phoenix." When Jane Doe started to hyperventilate on the couch and C.Y. tried to comfort her, Defendant separated the sisters and threatened to hit Jane Doe with the hammer if she did not stop crying. Later, P.C.'s son arrived at the house and chased Defendant away with a gun. P.C. and the children fled from the house. The three children ran to the mountainside and hid there for hours until the sun went down.

When she left P.C.'s house, Defendant ran into the unlocked home of Priscilla Sage, who took the hammer away from Defendant. Priscilla's daughter R.S. fought Defendant before Shaun Sage, R.S.'s brother, arrived. Defendant left the area and was picked up by James and Kee in her car.

The three then drove to R.S.'s house. R.S. was home with her two minor daughters, ages 10 and 4, and heard a car arrive and someone yelling. When R.S. opened the front door, Defendant was standing there pointing a gun at the house. R.S. closed the door and heard a gunshot. Defendant said, "I already told you I was going to f***ing come back and shoot you." James tried repeatedly to kick and push the door open to R.S.'s house, and R.S. heard a second gunshot. Worried about her children, R.S. finally let the door swing open and rushed out of the house. Defendant pointed the gun at R.S., who successfully

fought Defendant for the gun and hit Defendant in the head with it. As James wrestled with R.S. for the gun, Shaun Sage arrived and fought James. Finally, Defendant, James, and Kee left the area in Defendant's car.

Defendant was indicted on July 29, 2025, but she could not be located by law enforcement officers who checked several houses and spoke to Defendant's relatives. On August 27, 2025, the Navajo Nation Police Department (NNPD) received a call from a woman in distress. The woman reported that another woman, later identified as Defendant, was hitting the windows of her medical transport van and trying to get inside. Defendant allegedly fired a gun at her. By the time NNPD officers arrived, Defendant had left the area. Defendant was later spotted leaving a 20-gauge Mossberg shotgun by the road, which was recovered by law enforcement. Later that day, a NNPD officer apprehended Defendant and arrested her on five outstanding criminal warrants. Defendant was taken into federal custody for the charges in this case on August 29, 2025.

As indicated in the Pretrial Services Report, Defendant is 35 years old, does not have a regular residence, and has been largely unemployed since 2012. Doc. 15. Her mother indicates that Defendant is transient and not welcome in the mother's home. Most of the victims in this case are relatives of Defendant. Defendant has a severe substance abuse problem, including opioids, methamphetamine, and alcohol. Her recent incarceration is the first time in years she has been sober for any extended period. Defendant's tribal criminal history reflects three charges, but no convictions. *Id.*

### III. Analysis.

Defendant did not proffer evidence or facts to rebut the facts set forth above. Defendant instead argues that she should be screened for the Crossroads residential substance abuse program and, if admitted, should be released for treatment in that program.

The Court must consider four factors in resolving this appeal: (1) the nature and seriousness of the offenses charged; (2) the weight of the evidence against Defendant; (3) Defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature

and seriousness of the danger to any person or the community that would be posed by Defendant's release. 18 U.S.C. § 3142(g).

Addressing these factors, the Court notes the following: Defendant is charged with serious violent conduct against multiple victims. She terrorized children and an elderly woman, detained the victims, brandished a hammer, brandished a firearm, fired a firearm, threatened to kill some of the victims, and destroyed property. She also fired a gun at a medical transport van driver and discarded a shotgun. Her violent and threatening conduct occurred not only during her rampage in 2024, but a year later when she was finally located and detained. After she was arrested, Defendant admitted she knew law enforcement was looking for her.

Defendant has no stable residence or employment, suffers from severe substance abuse addiction, and committed the alleged acts against family members. The evidence in support of the government's case appears strong, with multiple witnesses who could testify about Defendant's conduct. Defendant also admitted some of the criminal conduct during a post-arrest interview. Additionally, some of the information Defendant provided the pretrial services officer was contradicted by Defendant's mother, suggesting Defendant was not fully forthcoming. *See* Doc. 15.

Defendant's criminal history is limited, but the series of serious acts alleged in this case show that her actions were neither aberrant nor isolated. Defendant faces a sentence of more than 25 years in prison. Defendant was supported by family at the October 2 hearing, but as noted, many of the victims in this case were also family members.

The Court is not persuaded that the defense recommendation of substance abuse treatment rebuts the presumption of detention in this case. Crossroads does good work, but it is a nonsecure facility. Defendant could leave at any time, and has demonstrated her willingness and ability to live a transient life. Although her family home on the reservation is some 300 miles away, one of the victims in this case now lives in Phoenix. What is more, Defendant's extremely threatening conduct, her callous disregard for the safety and wellbeing of her family-member victims, including children, and the fact that she engaged

in assaultive and dangerous conduct, again with a firearm, a year after the attacks on her family members, strongly suggest Defendant remains a danger to the family and the community. Defendant undoubtedly needs substance abuse treatment, but the Court cannot release her to an unsecured facility with any confidence she will abide by the rules and limitations of the facility given her alleged conduct in this case and her years of transient living while abusing substances.

Reviewing this case *de novo*, the Court finds by clear and convincing evidence that Defendant is a danger to the community and by a preponderance of the evidence that she is a flight risk. No condition or combination of conditions will reasonably assure the safety of the community or her appearance at trial. 18 U.S.C. § 3142(e).

**IT IS ORDERED** that Defendant's appeal of Judge Bible's detention order (Doc. 20) is **denied**.

Excludable delay pursuant to 18 U.S.C. § 3161(h)(1)(D) is found to commence on _____ for a total of __ days.

Dated this 2nd day of October, 2025.

David G. Campbell
Senior United States District Judge